FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 3 - 2009 ★
BROOKLYN OFFICE

ORIGINAL
D&F
CIM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
TANYA RIVERS, MIGUEL MERCADO,
LARRY GAINES, ROBERT RUDDOCK,
LEE LUMBLEY, MICHAEL WILLIAMS,
JUDY G., EDWIN (aka "ERICA")
VARGAS, AND VICTOR CAPO, on
behalf of themselves and others similarly
situated,

     Plaintiffs,

 -against-

ROBERT DOAR, as Commissioner of the
New York State Office of Temporary and
Disability Assistance, VERNA
EGGLESTON, as Commissioner of the
New York City Human Resources
Administration, and ELSIE DEL CAMPO,
as Commissioner of the New York City
HIV/AIDS Services Administration,

     Defendants.
------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 06-CV-5863 (FB)(MDG)

*Appearances:*
*For the Plaintiff:*
MATTHEW D. BRINCKERHOFF, ESQ.
Emery Celli Brinckerhoff & Abady PC
75 Rockefeller Plaza, 20th Floor
New York, NY 10019

*For the Defendants:*
ROBERT L. KRAFT, ESQ.
WILLIAM H. BRISTOW III, ESQ.
Office of the Attorney General
120 Broadway
New York, NY 10271

MARTIN JOHN BOWE, ESQ.
New York City Law Department
100 Church Street
New York, NY 10007

**BLOCK, Senior District Judge:**

   In this case, plaintiffs, nine indigent New York City residents with HIV or

AIDS living in public housing, sue to enforce the rent cap provisions found in Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.* ("Section 8"), and in the regulations promulgated under the Housing Opportunities for People with AIDS law, 42 U.S.C. § 12901 *et seq.* ("HOPWA"). Before the Court is the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for mootness. For the reasons described below, the Court grants the motion.[1]

I

## A. HIV/AIDS-Supportive Housing in New York City

The Office of Temporary and Disability Assistance ("OTDA") is a New York state agency which supervises the administration of public-assistance programs available to low-income New York residents. These programs are administered through local services districts throughout New York state; in New York City, the programs are administered by the New York City Human Resources Administration ("HRA"). Local administrators, including HRA, are responsible for determining the amount of financial assistance to be furnished from public assistance funds to each eligible household.

Public assistance to New York City recipients is paid for out of local HRA funds and is subsequently partially reimbursed by OTDA from state funds. Thus, while the state agency, OTDA, does not directly control how much financial assistance is

---

[1] Plaintiffs also seek to certify this suit as a class action on behalf of all persons in New York City living in federally subsidized housing for persons with HIV/AIDS, claiming that this class consists of at least 2,200 members. Because the Court dismisses this action as moot, it does not reach the issue of class certification.

provided to plaintiffs and other individual recipients, OTDA can exert significant influence over HRA's expenditures by virtue of its reimbursement policy.

As part of its public assistance efforts, HRA provides supportive housing for people with HIV/AIDS, including plaintiffs. This housing is partially subsidized by the federal government via HOPWA grants from the Department of Housing and Urban Development ("HUD"). The housing is also paid for in part by rent contributions from the residents. The remainder of the cost of the housing has historically been paid for by HRA, and subsequently reimbursed by OTDA. Prior to October 2006, HRA for over 15 years had required plaintiffs and others living in such housing ("HOPWA tenants") to contribute 30% of their monthly income toward their rent.

HRA also provides federally-subsidized public housing for indigent persons pursuant to Section 8. Like HOPWA tenants, Section 8 tenants have historically been required to contribute 30% of their monthly income as rent. Persons who are *both* sufficiently indigent *and* have HIV/AIDS may qualify for housing under Section 8 as well as HOPWA. Only two of the nine plaintiffs – Robert Ruddock and Erica Vargas – fall into this category.

## B. Events Leading to This Litigation

In 2004, OTDA audited HRA's claims for reimbursement and concluded that HRA's expenditures on HIV/AIDS-supportive housing were too high. Accordingly, OTDA insisted that HRA increase the monthly contribution that HOPWA tenants were required to pay toward their rents. OTDA began withholding reimbursement from HRA

until such time as HRA took corrective action. By mid-2006, OTDA had withheld more than $150,000,000 in reimbursement funds from HRA.

In October 2006, HRA sent plaintiffs and other New York City HOPWA tenants a letter informing them that, effective November 1, 2006, HRA would "demand that [HOPWA tenants] contribute all of their income, save $330, toward their rent." Compl. ¶ 44.[2] For plaintiffs, this would represent a sudden, sizeable increase of their monthly rental contributions and would impose a serious hardship. Just before the new policy was set to take effect, plaintiffs filed suit, claiming that the new policy violated HOPWA and Section 8. On November 2, 2006, the Court preliminarily enjoined the defendants from requiring plaintiffs to pay more than 30% of their monthly income toward rent.

## C. Post-Injunction Events

Only days after the Court granted its preliminary injunction, Eliot Spitzer was elected Governor of New York. He appointed the then-chief of HRA as the new commissioner of OTDA. Thereafter, OTDA and HRA conferred regarding the rent caps at issue in this litigation "and reached an agreement whereby the [30%] rent cap would remain in place permanently." Esnard Decl. ¶ 15. This agreement "allow[ed] HRA to resume submitting, for reimbursement, those assistance benefits–up to the thirty percent mark–provided to [HOPWA tenants]." *Id.*

---

[2] The rent contributions for tenants covered only by Section 8 (i.e., indigent tenants without HIV/AIDS) were not subject to the new policy. According to plaintiffs, however, tenants subject to *both* HOPWA and Section 8 (indigent tenants *with* HIV/AIDS) *would* be subject to the new policy.

4

On March 1, 2007, the new Commissioner of OTDA testified before the New York State Legislature, stating that "[i]t ha[d] been one of [his] first priorities in [his new] position to resolve [the] issue" of the rent caps, and that he was "pleased to report that [OTDA] and HRA ha[d] reached an agreement to ensure that clients in [HOPWA] housing [would] not experience any change in the 30% rent contribution they have historically made." Id. ¶ 18.

On March 8, 2007, OTDA sent HRA a letter agreeing that "HRA will continue on a prospective basis to budget only 30% (as opposed to 100%) of clients' income toward their housing costs in [HOPWA] housing," and that OTDA would reimburse HRA as it historically had. Letter of Russell Sykes, Ex. E to Esnard Decl., at 1. The letter stated that "OTDA is now convinced that HRA has sound programmatic reasons to continue its practice of only budgeting 30% of the income" and informed HRA that "[o]nce HRA [submitted a] Corrective Action Plan . . . , [OTDA would] consider the income budgeting issue fully resolved." Id. On March 29, 2007, the HRA submitted a Corrective Action Plan to OTDA reflecting its intent to continue the 30% rent cap. On March 30, OTDA approved the plan and "confirm[ed] that the income budgeting issue [was] fully resolved." Letter of Russell Sykes, Ex. E to Gaskell Decl., at 1.

By letter dated August 31, 2007, HRA informed plaintiffs and all other HOPWA tenants that their "rent contribution [would] remain unchanged at 30% of [their] household income so long as [they] reside in eligible housing." Letter of Mary Harper, Ex. H to Esnard Decl., at 1. This letter was approved by the Commissioner of OTDA.

Thereafter, plaintiffs' counsel placed an announcement on its website stating that "[OTDA] Commissioner David Hansell['s] announce[ment] that the policy would be withdrawn [had] g[iven] plaintiffs a complete victory." Ex. D to Esnard Decl.

## II

Were the Court to reach the merits, it would be confronted with an issue of first impression: is there a private right of action to enforce the rent cap provision in HOPWA's implementing regulations? As explained hereafter, however, the Court does not decide that question because the defendants have restored the 30% rent cap, thereby rendering this litigation moot.[3]

---

[3] Although restoration of the 30% rent cap enures to plaintiffs' benefit, their counsel have vigorously pressed the Court to address the merits and, in particular, their contention that HOPWA gives them a private right of action to enforce the rent cap. As explained at oral argument, counsel's strategy is risky because the existence of such a right of action is hardly a foregone conclusion. The rent cap at issue derives, not from HOPWA's statutory text, but from a HUD regulation. See 24 C.F.R. § 574.310(d). According to the Supreme Court, "[l]anguage in a regulation may invoke a private right of action that *Congress through statutory text* created, but it may not create a right that Congress has not," *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (emphasis added); in other words, "[t]he language of the statute and not the rules must control," *id.* (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 n.18 (1979)). *Accord Lonberg v. City of Riverside*, ___ F.3d ___, 2009 WL 1813526, at *3 (9th Cir. 2009 ("[U]nder *Sandoval*, [the regulatory provision at issue] is not enforceable through [a] private right of action because the obligations it imposes are nowhere to be found in [the statute's] plain language."). Although Congress directed HUD to implement HOPWA "to the extent practicable in the manner provided for under section 8 of the United States Housing Act of 1937," 104 Stat. 4079, 4381 § 859 (codified at 42 U.S.C. § 12908), it is by no means clear that the directive is, under *Sandoval*, sufficient to constitute an expression of congressional intent to create an analog to Section 8's privately enforceable rent cap. *See* 532 U.S. at 287-88 (suggesting that inferring congressional intent to create a private right of action by reference to a prior statue is appropriate only when it involves "Congress's enactment (or reenactment) of the verbatim statutory text that courts had previously interpreted to create a private right of action").

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "There is no justification for [a court's] retaining jurisdiction . . . where no real controversy is before [it]." *Frank v. Minnesota Newspaper Ass'n, Inc.*, 490 U.S. 225, 227 (1989) (per curiam). "[W]hether [a case] should be dismissed [as moot] or not lies within the sound discretion of the district court, and 'a strong showing of abuse must be made to reverse it.'" *Harrison & Burrowes Bridge Constr., Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Plaintiffs argue that this case is not moot, notwithstanding defendants' decision to abandon the proposed policy change, because of "the general rule that voluntary cessation of a challenged practice rarely moots a federal case." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001); *see also* Erwin Chemerinsky, Federal Jurisdiction (4th ed. 2003) § 2.5.4 ("A case is not to be dismissed as moot if the defendant voluntarily ceases the allegedly improper behavior but is free to return to it at any time."). Courts may find mootness even in cases of voluntary cessation, but "[t]he burden [of showing that the improper behavior will not recur] is a heavy one." *W.T. Grant*, 345 U.S. at 632; *see also Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 189 (2000). Under Second Circuit case law, "[t]he voluntary cessation of allegedly illegal conduct usually will render a case moot 'if the defendant can demonstrate that . . . there is no reasonable expectation that the alleged violation will recur . . . .'" *Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004) (quoting *Granite State Outdoor*

*Advertising, Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002)).

Because this case involves the voluntary abandonment of an official policy of a government agency, it is analogous to cases involving the voluntary amendment or repeal of challenged statutes or ordinances. "[C]hallenges to statutes are routinely found moot when a statute is amended." *Harrison*, 981 F.2d at 61; *see, e.g., Granite State*, 303 F.3d at 451-52 ("[T]here is no reason to think that, having completely revised its regulations through proper procedures, the Town has any intention of returning to the prior regulatory regime."). In such cases, "[s]ome deference must be accorded to a state's representations that [the offending] conduct has been discontinued." *Harrison*, 981 F.2d at 59; *accord Lamar*, 356 F.3d at 377 ("[D]eference to the [government's] decision to amend is the rule, not the exception."); *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988) ("[C]essation of . . . allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties." (quoting 13A Wright, Miller & Cooper Federal Practice and Procedure § 3533.7, at 353 (2d ed. 1984)).[4]

The common thread uniting the cases in which the Second Circuit has dismissed as moot challenges to voluntarily abandoned statutes or ordinances is that the record presented no affirmative evidence that the challenged provision would be re-enacted. *See Lamar*, 356 F.3d at 377 ("We see nothing on this record that would lead us to

---

[4]*But see Nat'l Advertising Co. v. Town of Babylon*, 900 F.2d 551, 554 n.2 (2d Cir. 1990) ("[V]oluntary repeal of a constitutionally repugnant law does not necessarily moot challenges to it, because without a judicial determination of constitutionality the particular governing body remains free to reinstitute the law at a later date."), *criticized in Lamar*, 356 F.3d at 376 & n.14.

8

believe that Orchard Park intends to return to the questionable state of affairs that existed before Lamar filed suit."). By contrast, where the record does contain "evidence that the defendant intends to reinstate the challenged statute after the litigation is dismissed," the Second Circuit has stated that a court should retain jurisdiction. *Id.* at 377.

Here, there is nothing in the record affirmatively suggesting that defendants intend to re-institute the challenged policy.[5] By contrast, the record is replete with evidence that the policy has been officially abandoned. Defendants have made a visible public commitment before plaintiffs, the state legislature and the New York public to maintain the historic 30% rent cap, and in the absence of evidence to the contrary, the Court must show deference to their official acts and pronouncements. *See Harrison*, 981 F.2d at 59; *Lamar*, 356 F.3d at 377.[6]

---

[5] At oral argument, defendants conceded that there was some theoretical possibility that they would change their rent policy at some time in the future if dire economic conditions forced their hand; however, the mere "physical or logical []possibility that the challenged policy will be reenacted," in the absence of any concrete evidence of the government's intent to do so, is not enough to keep this controversy alive. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009).

[6] Although it is not essential to the Court's mootness decision, the Court notes that the New York legislature is currently considering a bill that would place a permanent 30% statutory cap on the rent contributions of all New Yorkers with HIV/AIDS receiving public housing benefits. *See* S. 2664, 2009-10 Leg., Reg. Sess. (N.Y. 2009). In addition to HOPWA tenants, this rent cap would apply to New Yorkers with HIV/AIDS living in *non*-federally-subsidized housing (who are not subject to HOPWA). At the time this case was decided, the bill had passed the State Senate and had been referred to the Assembly. *See* http://assembly.state.ny.us/leg/?bn=S02664.

## III

For the foregoing reasons, the Court dismisses this action as moot.

**SO ORDERED.**

s/FB

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 29, 2009