```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X

TANYA RIVERS, MIGUEL MERCARDO, LARRY
GAINES, ROBERT RUDDOCK, LEE LUMBLEY,
MICHAEL WILLIAMS, JUDY G., EDWIN (aka
"ERICA") VARGAS, AND VICTOR CAPO, on
behalf of themselves and others
similarly situated,

                Plaintiffs,           MEMORANDUM AND ORDER

                                      CV 2006-5863 (FB)(MDG)
          - against -

ROBERT DOAR, as Commissioner of the
New York Office of Temporary and
Disability Assistance, VERNA
EGGLESTON, as Commissioner of the New
York City Human Resources
Administration, and ELSIE DEL CAMPO,
as Commissioner of the New York City
HIV/AIDS Services Administration,

                Defendants.
- - - - - - - - - - - - - - - - - - X
```

Go, United States Magistrate Judge:

The plaintiffs, who live in federally supported housing for persons living with AIDS, bring this putative class action to enforce certain rent cap provisions found in Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437 et seq. ("Section 8") and appurtenant regulations promulgated pursuant to the Housing Opportunities for People with AIDS law, 42 U.S.C. § 12901 et seq. ("HOPWA"). The Honorable Frederic Block has referred to me for decision  plaintiffs' motion for an award of

attorneys' fees pursuant to 28 U.S.C. § 1988.[1]  See minute order
dated May 19, 2010.

BACKGROUND

The pertinent facts are not disputed.  Unless otherwise
noted, the following background facts are taken from Judge
Block's memorandum and order dismissing this action.  See ct.
doc. 45.

The Office of Temporary and Disability Assistance ("OTDA")
is a New York state agency which supervises the administration of
public assistance programs available to low-income New York
residents.  In New York City, the public assistance programs are
administered by the New York City Human Resources Administration
("HRA").  HRA determines the amount of financial assistance
granted from public assistance funds to each eligible household
and pays public assistance to New York City recipients out of
local HRA funds.  HRA is subsequently partially reimbursed by
OTDA from state funds.

As part of its public assistance efforts, HRA provides
supportive housing for people with HIV/AIDS, including
plaintiffs.  This housing is partially subsidized by the federal
government via HOPWA grants from the Department of Housing and
Urban Development ("HUD") and by HRA which is subsequently

---

[1] Since Judge Block referred plaintiffs' motion to me for
decision, this opinion is styled as a memorandum and order.  In
the event either party files an objection to this order, Judge
Block will apply the standard of review he deems appropriate.

reimbursed by OTDA. For many years, HRA had required plaintiffs and others living in such housing to contribute only up to 30% of their monthly income toward their rent.

Following an audit, in 2004, OTDA concluded that HRA's expenditures on HIV/AIDS supportive housing were too high and directed HRA to increase the monthly contribution that tenants were required to pay toward their rent. OTDA began withholding reimbursement from HRA until it imposed such increases.

In early October 2006, the plaintiffs received notice from HRA that the formula for rental assistance would change from the cap of 30% of income and, beginning November 1, 2006, recipients would be required to contribute all of their income, save $330, toward their rent. Such a change would cause the plaintiffs to contribute a larger portion of their subsistence income on rent.

Plaintiffs commenced this action on October 30, 2006, claiming that HRA's stated intent to change the cap on required rental contributions of clients living in supportive housing violated federal law. See ct. doc. 1. Proceeding by order to show cause, plaintiffs sought a preliminary injunction prohibiting any changes to the 30% cap on rent contributions of the plaintiffs. See ct. doc. 5.

Later that day at approximately 3:30 p.m., Judge Block held a hearing at which counsel for the both the City and State defendants appeared. Counsel for the City defendants, who had just received the motion papers, advised the Court that his

clients would be willing "to agree to, pending the outcome of this litigation, continue with the status quo," pointing out that the OTDA forced the City to implement a change in its policy by withholding more than $150 million in reimbursement funds from HRA.  Transcript of Order to Show Cause Hearing held on October 30, 2006 ("Tr.") at 7, 13, 28-29.  Contending that the State had no involvement in implementing the policy at issue, counsel for the State defendant advised that her client had no interest in participating in either an injunction or stipulation.  Id. at 17-18.  At the request of counsel for the City defendants, the Court gave the participants until 5:00 p.m. to attempt to work on the language of a stipulation.  Id. at 16, 18-28.  When no stipulation could be reached when the hearing later resumed, Judge Block ordered as follows on the record:

> So, based upon the argument in court today and the parties admirable concessions and willingness to collectively bring comfort and assurance to the plaintiffs and to the alleged 2,200 members of what might ultimately constitute a class, that they need not be apprehensive about having their rents raised to more than 30 percent of their income, which the City acknowledges has been the past and the current practice and the City will continue to do that pending the ultimate resolution of this litigation.  The Court will give comfort to all of these parties by ordering right now that the defendants are preliminarily enjoined and defendants mean officers, directors, principals, agents, servants, employees, successors, assigns, and all of those acting in concert or participation with them from requiring the plaintiffs and the plaintiff, well, not the plaintiff class but it may well be broadened to include the plaintiff class but we understand what we're talking about right now requiring the plaintiffs to pay more than 30 percent of their income towards rent.

> And in issuing this preliminary injunction, the Court
> acknowledges the position of the attorney representing
> the City, given the fact that he's just received these
> papers recently, that the City has in fact not required
> more than 30 percent of the income of the plaintiffs to
> be paid towards rent. And we all understand that that
> be the case, then the preliminary injunction which the
> Court has now ordered would be academic but
> nonetheless, it does have some comfort, I think, to the
> plaintiffs which is what I think is indicated under all
> of the circumstances. So that's the spirit underlying
> the Court's preliminary injunction. And the Court notes
> also that the State is not conceding that it has taken
> any action whatsoever that should be construed or
> interpreted to mean that it supports lifting the 30
> percent cap under the statutory and regulatory scheme
> or policy, whatever that might turn out to be, the
> Court understands that.
>
> But nonetheless, the Court once again draws comfort
> from the fact that the plaintiffs need not be concerned
> that, be it the City or the State or any of the agents,
> they have to fear pending the ultimate resolution of
> this litigation, that they will be required to pay more
> than 30 percent of their income towards rent. So, I
> think that really does acknowledge the interest of all
> parties and in the spirit of pulling this together on
> very short notice.

Id. at 29-30. He also signed an order that day which was entered on November 2, 2006 preliminarily enjoining the defendants from requiring the plaintiffs to pay more than 30% of their incomes toward rent. Ct. doc. 2.

One week later, Elliot Spitzer was elected Governor of New York on November 7, 2006. On December 22, 2006, Governor Spitzer appointed former HRA Chief of Staff David Hansell to the position of Commissioner of OTDA. On January 8, 2007, Mayor Bloomberg appointed former OTDA Commissioner Robert Doar as Commissioner of HRA. In subsequent meetings regarding the rent cap at issue in the litigation, OTDA and HRA reached an agreement whereby the 30%

-5-

rent cap would remain in place permanently.

In lieu of answering, both the City and State defendants filed separate requests in December 2006 seeking a pre-motion conference with Judge Block to discuss contemplated motions to dismiss and/or for summary judgment on grounds that they are not subject under applicable statutes to the 30% cap on income for housing assistance. See ct. docs. 9, 10. The pre-motion conference was adjourned at the parties' requests numerous times to enable them to pursue settlement amongst themselves and with the Court. See ct. docs. 11, 15, 17, 18, 20. However, the parties were unable to reach agreement on the terms of a written settlement agreement. The defendants ultimately filed their motions to dismiss the complaint only on grounds of mootness in early January 2009. See ct. docs. 33-41. Judge Block granted the motions by order entered on August 3, 2009. Ct. doc. 45.

Plaintiffs' counsel then filed the instant motion seeking an award of attorneys' fees as "prevailing parties" in this action. See ct. doc. 51.

## DISCUSSION

Section 1988 provides that reasonable attorneys' fees and costs may be awarded to a "prevailing party" in any action or proceeding to enforce the provisions of 42 U.S.C. § 1983. In order for attorneys' fees to be recoverable, a party must have created a court ordered "material alteration of the legal relationship of the parties" through an enforceable judgment or

consent decree. See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (2001).

The entry of a preliminary injunction may permit the award of attorneys' fees. See Garcia v. Yonkers Sch. Dist., 561 F.3d 97, 102 (2d Cir. 2009). However, "a grant of provisional relief that merely preserves the status quo" is not sufficient to merit "prevailing party" status. See LaRouche v. Kezer, 20 F.3d 68, 74 (2d Cir. 1994); see also Garcia, 561 F.3d at 106-07; Christopher P. v. Marcus, 915 F.2d 794, 805 (2d Cir. 1990). In addition, "fees are not warranted . . . if the court has not based its decision to award interim relief on the merits." Haley v. Pataki, 106 F.3d 478, 483 (2d Cir. 1997); see LaRouche, 20 F.3d at 74; Christopher P., 915 F.2d at 805.[2] "A determination of whether a court's action is governed by its assessment of the merits 'requires close analysis of the decisional circumstances and reasoning underlying the grant of preliminary relief. If an injunction is not clearly based on the merits, a court should not resolve the uncertainty in favor of a finding that plaintiff prevailed." Haley, 106 F.3d at 483 (quoting LaRouche, 20 F.3d at 72).

Plaintiffs argue that they are entitled to "prevailing party" status because they obtained a preliminary injunction

---

[2] Although Haley, LaRouche and Christopher P. were decided before the Supreme Court's opinion in Buckhannon, the Second Circuit has continued to cite them with approval. See, e.g., Garcia, 561 F.3d at 106; Vacchio v. Ashcroft, 404 F.3d 663, 672-73 (2d Cir. 2005).

preventing the defendants from implementing a change in policy that would have resulted in a substantial loss in their benefits. However, it is clear from a review of the transcript that before the preliminary injunction was entered, the City had already agreed to suspend implementation of the new policy pending the outcome of the instant litigation. The preliminary injunction order simply preserved the status quo rather than effected a "material alteration of the legal relationship of the parties." Judge Block noted that "the preliminary injunction which the Court has now ordered would be academic, but nonetheless it does have some comfort." Tr. at 30-31.

More importantly, Judge Block's decision to issue the injunction was unquestionably not based on any findings as to the plaintiff's likelihood of success on the merits. He noted on the record that he was issuing an injunction based on the parties' "admirable concessions and willingness to collectively bring comfort and assurance to the plaintiffs and to the alleged 2,200 members of what might ultimately constitute a class." Id. at 29-30. He also recognized that the State had not made any concession that could be construed as agreement or support for plaintiffs' interpretation of the regulatory or statutory scheme governing the 30 percent cap. Id. at 31. In fact, in response to the request of plaintiffs' counsel to treat their motion as a motion for a permanent injunction, Judge Block observed that "there could be also some affirmative defenses. I don't know

what there is out there." Id. at 33. At the conclusion of the hearing, Judge Block reiterated: "... we understand that nobody is making any admissions or acknowledgments. You've come to this agreement. That's terrific." Id. at 38.

In his written order, Judge Block referred to the statements made in Court and, in the first and only paragraph regarding plaintiffs' request for a preliminary injunction, merely ordered that defendants are preliminarily enjoined "from requiring plaintiffs to pay more than 30% of their income toward rent..." Ct. doc. 2 at 2. The order issued did not contain any factual findings or conclusions addressing the grant of a preliminary injunction as required by Fed. R. Civ. P. 52(a)(2) and 65(d)(1). See Garcia, 561 F.3d at 105.[3] In later dismissing the suit on mootness grounds, Judge Block expressed doubts as to whether the plaintiffs had a private right of action to enforce the rent cap. Ct. doc. 45 at 6 n.3.

Plaintiffs argue that the issuance of the preliminary injunction "ipso facto required a determination that Plaintiffs were likely to succeed on the merits of their claim." Pl.s' Reply at 3. However, in the Second Circuit, a showing of a likelihood of success on the merits is not required to obtain a preliminary injunction. See Citigroup Global Markets, Inc. v.

---

[3] Fed. R. Civ. P. 52(a)(2) requires that a court "state the findings and conclusions that support its action" when granting or denying an interlocutory injunction). Fed. R. Civ. P. 65(d)(1) states that an order granting an injunction "must state the reasons why it issued."

VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010). Rather, a district court is permitted to grant a preliminary injunction "in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." Id. Although there is an exception to this general standard where the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, that exception does not apply here. That exception "reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." Able v. U.S., 44 F.3d 128, 131 (2d Cir. 1995).

However, in this case, the government action to be taken was based on a policy formulated solely by the executive branch and outside a regulatory framework. See Haitian Centers Council, Inc. v. McNary, 969 F.2d 1326, 1339 (2d Cir. 1992); Carey v. Klutznik, 637 F.2d 834, 829 (2d Cir. 1980); see also Able, 44 F.3d at 131-32 (distinguishing enforcement of "Don't Ask, Don't Tell" policy which was formed by the President and Congress after a lengthy public debate). In light of the City's position that it was forced to change its longtime policy by the OTDA, this is a case where no party could lay exclusive claim on the public

interest.  See Haitian Council, 969 F.2d at 1339; Carey, 637 F.2d at 839.  In contrast, in the case relied on by plaintiffs, see Pls.' Reply at 3, the New York State Department of Social Services clearly acted in the public interest and in accordance with the regulatory scheme in suspending from Medicaid participation a medical lab that had dumped hazardous waste into public waters.  See Plaza Health laboratories, Inc. v. Perales, 878 F.2d 577, 580-81 (2d Cir. 1989).

Secondly, plaintiffs argue that they are entitled to an award of attorneys' fees because the defendants abandoned their attempt to change the rent cap policy in response to this lawsuit.  However, in Buckhannon, the Supreme Court held that a plaintiff is not a "prevailing party" even if he or she "achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."  532 U.S. at 605.  In that case, the West Virginia fire marshal ordered the closure of residential care facilities because some of the residents were incapable of "self-preservation" as defined under state law.  Id. at 600.  After a corporation brought suit on behalf of itself and other similarly situated homes and residents claiming that the "self-preservation" requirement violated federal law, the West Virginia Legislature amended the law eliminating the "self-preservation" requirement.  Id. at 600-01.  Following the change in the law, the district court dismissed the case as moot.  Id. at 601.  In rejecting the "catalyst theory," the Court concluded

that it is irrelevant whether the plaintiff's lawsuit was a substantial factor in the City defendant's voluntary decision to change its conduct. Id. at 610. It also expressly refused to consider arguments regarding the defendant's motivations in changing its conduct. Id. at 609.

In this case, the defendants' voluntary abandonment of a change in its rent cap policy resulted in Judge Block dismissing the case on mootness grounds. The plaintiffs did not obtain a judgment on the merits or any result with the required "judicial imprimatur" on the change in defendant's conduct. Id. at 605. Whether the plaintiffs are correct under applicable federal statutes and regulations simply was not addressed.

In sum, the plaintiffs are not prevailing parties under section 1988.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for attorneys' fees is denied.

**SO ORDERED.**

Dated: Brooklyn, New York
September 30, 2010

/s/
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE